UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:23-cr- 57 IM |
| v. | INDICTMENT |
| VLADIMIR OKHOTNIKOV, a/k/a "LADO," <br> OLENA OBLAMSKA, a/k/a "LOLA FERRARI," <br> MIKHAIL SERGEEV, a/k/a "MIKE MOONEY," <br> "GLEB," "GLEB MILLION," and <br> SERGEY MASLAKOV, | 18 U.S.C. §§ 1349, 981 <br><br> Forfeiture Allegation |
| Defendants. | |

THE GRAND JURY CHARGES:

At all times relevant to this Indictment:

INTRODUCTORY ALLEGATIONS

**The Defendants and Forsage**

1.  Defendant Vladimir Okhotnikov, a/k/a "Lado," was a Russian national who resided in the Republic of Georgia.

2.  Defendant Olena Oblamska, a/k/a "Lola Ferrari," was a Russian national who resided in Bali, Indonesia.

3.  Defendant Mikhail Sergeev, a/k/a "Mike Mooney," "Gleb," and "Gleb Million," was a Russian national who resided in Russia.

4.  Defendant Sergey Maslakov was a Russian national who resided in Russia.

5.  Each of the defendants was a founder of Forsage, an unincorporated entity that was established in approximately late 2019 and operated a purported decentralized

**Indictment**                                                                                           **Page 1**

cryptocurrency investment platform. Okhotnikov directed, managed, and controlled Forsage's operations. Oblamska was the self-proclaimed "goddess" of Forsage. Sergeev served as Forsage's "Development Director." Maslakov was a self-proclaimed creator of Forsage.

6. The defendants advertised Forsage's decentralized finance platform as being based on self-executing software algorithms, also known as smart contracts, and aggressively touted Forsage's investment program to the public as low-risk and profitable. In truth, the defendants operated Forsage as an unlawful Ponzi and pyramid scheme. In total, Forsage took in approximately $340 million from victim-investors worldwide.

7. The defendants principally conducted Forsage's business through the website www.forsage.io, which was hosted by a U.S.-based web-hosting platform and was accessible worldwide to the public, including to prospective investors in the District of Oregon. The defendants also recruited a network of U.S.-based promoters to solicit interest in Forsage in the United States.

**Relevant Terms**

8. Cryptocurrency was a digital currency in which transactions were verified and records were maintained by a decentralized system using cryptography, rather than a centralized authority such as a bank or government. Like traditional fiat currency, there were multiple types of cryptocurrencies, including Bitcoin (BTC), Ether (ETH), Binance USD (BUSD), and Tron (TRX).

9. A cryptocurrency account was a digital account used to store, send, and receive cryptocurrency.

10. The blockchain was a distributed public ledger that recorded incoming and outgoing cryptocurrency transactions. There were multiple blockchains, including the Ethereum, Tron, and Binance Smart Chain blockchains.

11. A smart contract was a self-executing contract in which the terms of the contract were written into lines of computer code, which thereafter governed the execution of the smart contract. A smart contract, and its corresponding lines of computer code, existed on the blockchain and could be viewed and analyzed.

12. Decentralized finance, or "DeFi," generally referred to various financial applications or technology that sought to remove centralized institutions, third parties, and other intermediaries from financial transactions. Many DeFi applications were built on top of the Ethereum blockchain. Ethereum's platform allowed smart contracts to be deployed directly to the blockchain.

### The Formation of Forsage

13. The defendants formed Forsage in approximately late 2019 and launched Forsage's website in or around January 2020.

14. After the launch, the defendants and their network of promoters used interstate and foreign wire communications to disseminate false and misleading information regarding Forsage to prospective investors, including investors in the District of Oregon.

15. In marketing materials available on Forsage's website and social media, the defendants marketed Forsage as an international community of the global decentralized ecosystem and the first ever smart contract marketing matrix of the Ethereum and Tron networks. The defendants further claimed that Forsage's investment program was based on "a self-executing software algorithm that perform[ed] the function of distributing partner rewards between community members, subject to certain conditions," and that it was "the first ever 100% decentralized matrix project." The defendants also claimed that members of the Forsage community were on "equal footing," and that "everyone has the same opportunities."

16. To build and maintain investor interest in Forsage, the defendants introduced Forsage smart contracts on multiple blockchains. Forsage began on the Ethereum blockchain, but the defendants extended its application to the Binance Smart Chain and Tron blockchains. The Ponzi and pyramid structure of the defendant's investment scheme was coded into Forsage's smart contracts, which were substantially similar on each blockchain.

### The Defendants Falsely Advertised Forsage to Investors

17. The defendants falsely promoted Forsage to the public as a legitimate, low-risk, and lucrative investment opportunity through Forsage's website, YouTube channel, Instagram, and other social-media platforms.

18. For example, Forsage's website stated that "all" investor funds were "transferred between members, there [were] no hidden fees," and that "100% of the income goes directly and transparently to the members of the project with zero risk." These claims were false. In fact, part of Forsage's code (known as the "xGold" smart contract on the Ethereum blockchain) siphoned investors' funds out of the Forsage network and into cryptocurrency accounts under the defendants' control.

19. As a second example, during an April 2021 interview with a U.S.-based promoter, Oblamska and Okhotnikov claimed there were "50 millionaires" who "became millionaires in Forsage." This was false. In fact, as of the date of the video and as confirmed by blockchain analysis, Forsage user ID 1 (Forsage ID 1)—controlled by the defendants—was the only user ID that had received over a million dollars' worth of cryptocurrency in either the Forsage Ethereum programs or the Forsage Tron programs.

20. As a third example, when asked by an investor during a June 2020 interview about the possibility of losing money with Forsage, Sergeev stated that the investor "probably

had this experience on centralized projects," but that "in our case, this is practically impossible. We have a very large path to scaling." Similarly, a marketing video posted to Forsage's YouTube channel in or around May 2020 (and subsequently viewed more than 320,000 times) claimed that "100% of all Ethereum payments are sent instantly and directly to the members of Forsage" and that "you can create unstoppable passive income with Forsage as we grow and help people around the world." This was false. In fact, in Forsage's Ethereum program (which accounted for approximately 70% of all Forsage investments), over 80% of Forsage investors received fewer ETH back than they invested in Forsage, and over 50% of Forsage investors never received a single payout.

### Forsage was a Ponzi and Pyramid Scheme

21. Despite Forsage's marketing messages to the public, many Forsage investors lost money in large part because the defendants structured and used the Forsage investment platform to operate a Ponzi and pyramid scheme that benefited themselves and other early investors at the expense of later investors.

22. To participate in Forsage's investment program, a prospective investor was first required to purchase a "slot" in a smart contract developed by Forsage. To purchase a slot, an investor transferred funds—either Ethereum, Tron, or Binance tokens—from his or her own cryptocurrency account to one of Forsage's smart contracts on the blockchain.

23. As soon as a new investor transferred his or her funds, Forsage's smart contracts automatically diverted the new investor's funds to earlier investors' cryptocurrency accounts. That is, it was written into Forsage's code that earlier investors would be paid with funds from later investors—a hallmark of a classic Ponzi scheme.

24. Additionally, the defendants leveraged a pyramid scheme involving their network of promoters to lure unsuspecting investors. Under Forsage's pyramid structure, the more slots investors purchased, the more money they could earn from subsequent investors in their "downline." The earning potential for investors at the upper tiers of the pyramid was based on their downline investors, or those occupying the lower tiers of the pyramid. Using smart contracts, the defendants caused funds to be automatically directed to specific investors as those investors lured additional investors into the scheme.

25. The defendants assigned a unique identification number to each individual investor's cryptocurrency account. The defendants controlled the accounts in the uppermost tier of the pyramid for each Forsage program—Forsage ID 1 on the Ethereum blockchain, which earned more ETH than any other identification number. Forsage ID 1 itself utilized a smart contract that automatically divided and sent received funds to four separate wallets, which subsequently sent funds to personal cryptocurrency wallets controlled by each of the four defendants.

26. Forsage ID 1 also was unique in that it was not required to invest any funds in order to fully participate in the purported investment opportunity and was designated as the "upline" for any investor who signed up for a Forsage program without a referral link of another Forsage promoter. Contrary to assertions by the defendants and Forsage marketing materials, Forsage ID 1—and by extension the defendants who controlled and profited from it—were not on "equal footing" with other investors.

27. As Forsage's Ponzi and pyramid scheme grew, the defendants increasingly faced accusations from the public that Forsage was a scam. The defendants falsely denied these accusations through videos that they published online.

28. For example, during a June 2020 interview, Oblamska dismissed claims that Forsage was a pyramid scheme by asserting that Forsage was "decentralized" and that the blockchain "allowed us to make a project where the administration does not keep the money."

29. In the same interview, Okhotnikov stated, in response to investors' complaints about the large number of scams in the digital asset market, that these scams had nothing to do with Forsage, saying "we'll definitely have many partners that will become millionaires" and "already now it is clear that everything does not depend on whether you were at very beginning or very late; anyone can earn more than the creators."

30. As another example, in a video published on or about January 26, 2022, Okhotnikov stated that, "we could always honestly answer that we have nothing to do with financial pyramids. Forsage is anti-pyramid . . . in Forsage there are no economically unreasonable risky marketing payments, as in Ponzi scheme."

31. Regulators similarly began to question the fraudulent nature and appearance of the scheme and took steps to shut down Forsage's operation in specific states and countries. Specifically, on or about June 30, 2020, the Securities and Exchange Commission of the Philippines issued a notice informing the public that Forsage was engaged in the unregistered offer and sale of securities and that the program's structure bore the hallmarks of a potential scheme. Subsequently, on or about September 23, 2020, the Philippines Commission concluded its investigation and determined that Forsage had operated a fraudulent scheme involving unregistered securities through its investment platform.

32. In a video published on or about August 17, 2020, Maslakov dismissed the Philippines Commission's public notice regarding Forsage as "nonsense" and stated that "all people who have a common sense laughed at this." Maslakov further dismissed Forsage's critics

as being motivated by their lack of "control" over Forsage, which he explained made these critics accuse Forsage of "mortal sins."

33. Within the United States, on or about March 22, 2021, the Montana Commissioner of Securities and Insurance issued a Cease and Desist Order against Forsage operating its investment pyramid scheme in Montana. Montana was the first state in the nation to accuse Forsage of operating an illegal scheme.

34. On or about August 1, 2022, the United States Securities and Exchange Commission (SEC) filed a complaint charging the defendants with securities violations for operating Forsage.

35. On or about August 9, 2022, Okhotnikov published a video on YouTube denying the SEC charges. He claimed there were "no victims" of Forsage and that no participants "found themselves in a situation of financial pyramids." Despite appearing in numerous promotional videos published on U.S. platforms with U.S. citizens promoting the Forsage scheme, Okhotnikov claimed he had "in no way touched the jurisdiction of the United States." He claimed that Forsage is not a scam because "real scams can never win people's hearts."

## COUNT 1
### (Conspiracy to Commit Wire Fraud)
### (18 U.S.C. § 1349)

36. The Introductory Allegations of this Indictment are hereby realleged and incorporated by reference.

37. From in or around late 2019, and continuing through on or about the date of this Indictment, in the District of Oregon and elsewhere, the defendants, Vladimir Okhotnikov, Olena Oblamska, Mikhail Sergeev, and Sergey Maslakov, did knowingly and intentionally, that is, with the intent to advance the conspiracy, combine, conspire, and agree with each other and with other

individuals, known and unknown to the Grand Jury, to commit wire fraud, that is, to knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that such pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, to knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

38. It was a purpose of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by: (a) inducing investors to invest in Forsage through materially false and fraudulent pretenses, representations, and promises regarding the use of investors' funds and the Ponzi and pyramid structure of the Forsage platform; (b) generating profits for themselves and paying earlier investors with money from later investors; and (c) concealing the misappropriation of investors' funds through Forsage's network of smart contracts and cryptocurrency accounts.

39. The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, but were not limited to, the following:

 a. The defendants and their co-conspirators, using interstate and foreign wire communications, published videos to social media platforms to encourage investors, including investors in the District of Oregon, to invest in Forsage and used Forsage's website to promote the scheme.

    b.    The defendants and their co-conspirators, using interstate and foreign wire communications, coded and deployed smart contracts that operated their Ponzi and pyramid scheme on the Ethereum, Binance Smart Chain, and Tron blockchains.

    c.    The defendants and their co-conspirators, using interstate and foreign wire communications, made and caused others to make materially false and fraudulent pretenses, representations, and promises to, and concealed and caused others to conceal material facts from, investors and potential investors regarding Forsage's purported decentralized investment platform, smart contracts, and expected investment returns.

    d.    The defendants and their co-conspirators, using interstate and foreign wire communications, operated a Ponzi scheme through the Forsage platform by paying earlier investors with money from later investors.

    e.    The defendants and their co-conspirators, using interstate and foreign wire communications, operated a pyramid scheme through the Forsage platform by providing financial incentives to promoters to lure unsuspecting investors to invest in Forsage and by designing a structure in which the earning potential for investors at the upper tiers of the pyramid was based on those occupying the lower tiers of the pyramid.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE
## (18 U.S.C. § 981)

40.    The Introductory Allegations and Count One of this Indictment are hereby realleged and by reference incorporated herein for the purpose of alleging forfeiture to the United States of America certain property in which the defendants, Vladimir Okhotnikov, Olena Oblamska, Mikhail Sergeev, and Sergey Maslakov, have an interest.

41. Upon conviction of a violation of a criminal conspiracy to violate Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

Dated: February 22, 2023

A TRUE BILL.

███████████████████████
OFFICIATING FOREPERSON

Presented by:

GLENN S. LEON
Chief, Fraud Section

SARA HALLMARK
TIAN HUANG
Trial Attorneys, Fraud Section
Criminal Division
United States Department of Justice

NATALIE K. WIGHT
United States Attorney

QUINN P. HARRINGTON, OSB #083544
MEREDITH D.M. BATEMAN, OSB #192273
Assistant United States Attorneys

**Indictment**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Page 11**